ILLOVSKY LAW OFFICE
Eugene Illovsky (SBN 117892)
Eugene@illovskylaw.com
1611 Telegraph Avenue
Suite 806
Oakland, CA 94612
Phone: (510) 394-5885

*Attorney for Respondent*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| City of Almaty, Kazakhstan, and BTA Bank JSC,<br><br>Movants,<br><br>v.<br><br>Gennady Petelin,<br><br>Respondent. | Case No. 18-mc-00049-ODW-JC<br><br>**-DISCOVERY MATTER-**<br><br>**OPPOSITION TO MOTION TO TRANSFER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45(f)**<br><br>**Judge: Hon. Jacqueline Chooljian**<br>**Date: May 15, 2018**<br>**Time: 9:30 a.m.**<br>**Crtm: 20**<br><br>The Honorable Otis D. Wright II |

OPPOSITION TO
MOTION TO TRANSFER
Case No.: 18-mc-00049-ODW-JC

## INTRODUCTION

This motion to transfer should be denied. Rule 45(f)'s "prime concern" is to avoid burdening local non-parties who are subject to subpoenas. The Kazakh Entities have not shown that transfer of their pending motion to compel is necessary to avoid disrupting the Southern District of New York's management of the underlying litigation. Mr. Petelin's interests as the local non-party are not outweighed by any potential disruption to the New York litigation. He is entitled to have this extraordinarily invasive subpoena examined by the Court in his District.

## FACTUAL BACKGROUND

The Movants are plaintiffs in the underlying New York litigation, which is a case brought by agents of the government of the Republic of Kazakhstan arising out of the defendants' alleged theft from it that occurred in that country about a decade ago.[1] Plaintiffs are City of Almaty, Kazakhstan's largest city, and BTA Bank, a large state-controlled bank. The defendants include the former head of the BTA Bank, Mukhtar Ablyazov, who fled Kazakhstan as a political opponent of the current repressive Kazakhstan regime, and Almaty's former Mayor, Victor Khrapunov, and his son Ilyas.

Non-parties like Mr. Petelin who find themselves in these wealthy and powerful plaintiffs' crosshairs have reason for concern. Kazakhstan, the last republic to declare independence from the former Soviet Union, borders on Russia to the north. Its government is recognized as brutally repressive. For instance, according to Human Rights Watch, its authorities "have closed trade unions," they "target government critics, including journalists, with politically motivated or vague,

---

[1] Though not mentioned in the Kazakh Entities' transfer analysis, Kazakhstan has had similar litigation pending in this District against some of the same defendants since 2014. *See City of Almaty v. Victor Khrapunov, et al.,* No. 14-cv-03650-FMO(FFM) *consolidated with* Case No. 15-cv-02628-FMO(CW).

1                                                                OPPOSITION TO
                                                              MOTION TO TRANSFER
                                                         Case No.: 18-mc-00049-ODW-JC

overbroad criminal charges," and "[i]mpunity for torture and ill-treatment in detention persist."[2]

Mr. Petelin has more cause for concern than the typical non-party to this litigation and that concern has fueled his objections to the subpoena. He was a high-level official of the Russian Federation, serving as the chief of the secretariat for then-Prime Minister Viktor Chernomyrdin. He is out of favor with the current President of the Russian Federation, Vladimir Putin. He has expressed his concern over reports that Russian authorities are cooperating with Kazakhstan's efforts, and that information provided to Kazakhstan could be shared with Russia to exact political retaliation.[3]

The broadly invasive document subpoena (with 35 requests) served on Mr. Petelin, shows that he is now being hounded for what the Kazakh Entities admit is information about "his finances [and] sources of wealth" among other things. This has only heightened his worries. [Opening Br., p.1]. The main claims remaining in the New York case appear to be narrow causes of action for fraudulent conveyance of two real estate projects in New York City into which Triadou invested about $50 million that the Kazakh Entities say was stolen from them in Kazakhstan. The Kazakh Entities have asserted that they are tracing $450 million, even though the two real estate projects in the New York case involve $50 million. Accordingly, the subpoena goes well beyond those two projects.

Mr. Petelin objected to the subpoena.[4] Despite Rule 45's clear text, the Kazakh Entities made their motion to compel in the Southern District of New York.

---

[2] https://www.hrw.org/world-report/2018/country-chapters/kazakhstan (last visited April 21, 2018).

[3] See Declaration of Craig Wenner filed in connection with the Motion to Compel and Joint Statement, Exhs. 20, 24.

[4] The Kazakh Entities' incorrect assertion that non-party Mr. Petelin violated Rule 34(b)(2)(C), which on its face applies only to party-to-party requests, as well as their other legal arguments, can be addressed when the Court takes up the underlying motion.

On February 28, the Court there denied the motion without prejudice to refiling in the proper forum – this District.

The Court in that same February 28 order also rejected the Kazakh Entities' request that Wells Fargo produce unredacted bank records of Mr. Petelin (they had previously been redacted pursuant to an earlier ruling on Mr. Petelin's motion to quash the Wells Fargo subpoena on privacy grounds). The Court found such a request "overly broad and, at this point, an unwarranted intrusion of the Petelins' privacy." [Wenner Declaration, Exh. 21].

As they note, the Kazakh Entities have ruthlessly pursued extensive records from Wells Fargo, asking it to comb his bank records for "over 1,300 names" [Opening Br., p.3] and then recently for 170 more names.[5] As noted, Mr. Petelin had moved in 2017 in the New York Court to protect his privacy interests and quash the Wells Fargo subpoena. In March 2018, he also asked that Court to have the Kazakh Entities show the relevance to the case of the more recent list of 170 names before additional bank records were unredacted and also asked the Court to stay Wells Fargo's obligation to produce until the motion was resolved. The Kazakh Entities, Wells Fargo, and Mr. Petelin are currently engaged in meeting and conferring on those issues and reporting the status to the New York Court. Mr. Petelin could not have raised those challenges to the Wells Fargo subpoena in this District.

## ARGUMENT

The Kazakh Entities fail to carry their burden to show that "exceptional circumstances" require a transfer of their motion to compel. And since Mr. Petelin has not otherwise consented to transfer, the motion should be denied.

---

[5] In the New York Court's February 28 Order mentioned earlier, the Court had ordered the Kazakh Entities to give Wells Fargo a list of additional entities they asserted were relevant so those records could be unredacted. The Kazakh Entities produced a list with 170 or so names.

### A. Under Rule 45(f) the Kazakh Entities Must Show That "Exceptional Circumstances" Require a Transfer

Rule 45(d)(2)(B) protects a subpoenaed non-party's interests. It prohibits the imposition of "significant expense" on the non-party as well as requiring any motion for compliance to be brought in "the district where compliance is required." Under Rule 45(f), the "person subject to the subpoena [can] consent[]" to the transfer of such a motion to the issuing court.

On rare occasions, despite the directive to protect the subpoenaed non-party's interests, a motion can be transferred to the issuing court over that person's objection if the court finds "exceptional circumstances." Rule 45(f). The Kazakh Entities correctly point out that the Advisory Committee Notes to Rule 45(f) provide guidance for applying the rule. [Opening Br., p. 7]. That guidance states that "the proponent of the transfer bears the burden of showing that such circumstances are present." Committee Notes for Rule 45(f) (2013). And it could not be clearer that the "prime concern should be avoiding burdens on local nonparties subject to subpoenas." *Id.*

The notes indicate transfer is allowed if the subpoenaed non-party's interest in local resolution is outweighed by the need to "avoid disrupting the issuing court's management of the underlying litigation." *Id.* That situation might occur, for example, "when that court has already ruled on issues presented by the motion." *Id.* The New York Court has not ruled on Mr. Petelin's obligations under the subpoena.

### B. The Issuing Court's Management of the Underlying Litigation Will Not Be Disrupted If the Motion is Not Transferred

The Kazakh Entities repeatedly emphasize, to support transfer, that the issuing court in the Southern District of New York is "intimately familiar with this protracted litigation" or "is deeply familiar with the facts of this long-running and complicated case." [Opening Br., pp. 2, 7]. But the Committee Notes resist the idea

1  that an issuing court's familiarity is necessarily relevant to transfer. The Notes warn
2  that "it should not be assumed that the issuing court is in a superior position to
3  resolve subpoena-related motions." Committee Notes for Rule 45(f) (2013). This
4  warning sensibly protects the local non-party, since the issuing court will almost
5  always know more about its own case than the uninvolved court where compliance
6  is sought. The test is only whether the issuing court's "management of the
7  underlying litigation" will be disrupted to such a degree that the disruption
8  outweighs the interests of the local non-party.

9  Thus, the more pertinent part of the Kazakh Entities' argument is that the
10 New York Court's management of the underlying litigation will be disrupted
11 because of the "possibility of inconsistent rulings" that "might bring the judiciary
12 into disrepute." [Opening Br., p. 9 (quotations omitted]. Relying on *Woodward v.*
13 *Victory Records*, No. CV 14-490 ODW (AJW), 2014 WL 12569342, 2014 U.S. Dist
14 LEXIS 195776 (C.D. Cal, Mar. 12, 2014), the Kazakh Entities say that Judge Parker
15 in New York "has already ruled on the relevance of Petelin's finances twice" and
16 hold out the prospect of the supposed "havoc" a ruling on the non-party subpoena in
17 this Court may cause. [Opening Br., p.9].

18 We think *Woodard v. Victory Records* does not help the Kazakh Entities and
19 that they overstate the issue of what they call potentially "inconsistent rulings."
20 First, the *Woodard* case is not persuasive here because it involved motions practice
21 between parties, so Rule 45(f)'s concern for the protection of local non-parties was
22 not an issue.[6] In that case, the defendant subpoenaed non-party Janick; the issuing

---

[6] The Kazakh Entities are not helped by *UBS Securities LLC v. Third Eye Capital Corp.*, No. CV143997FMOMANX, 2014 WL 12613381, in which subpoena compliance proceeding were transferred out of this District to the issuing court. [Opening Br., p. 9]. There the subpoenaed party (Third Eye) was not a local individual but rather a company with "no presence in California" and thus had no "interest in obtaining resolution in the Central District of California." 2014 WL

court was the Northern District of Illinois and compliance was to be in this District. 2014 U.S. Dist LEXIS 195776 at *1-2. The plaintiff (not Janick) moved to quash the subpoena and the defendant moved to transfer plaintiff's motion to the issuing court's district. Of course, it would "promote judicial economy," *Id* at *4, to have a motion between the two parties litigated in the court where the two parties are litigating. That the Court transferred the motion is not surprising, since plaintiff there "conceded that there was no barrier to the Court's transferring their motion to the court in which the underlying action is pending . . .." *Id.* at *3. As the Court noted in transferring plaintiffs' motion, the non-party was not burdened "because the motion is plaintiffs', not his . . .." *Id.* at *6.

Second, Judge Parker in New York did make rulings about the relevance of Mr. Petelin's finances. Those rulings were made in connection with a subpoena directed to another non-party, Wells Fargo. They were not made in connection with the subpoena directed to Mr. Petelin. That Court also made rulings that Mr. Petelin had legitimate privacy interests to be protected (and indeed took steps to narrow the Wells Fargo subpoena to protect those interests). It is not clear why those rulings should control (one way or the other) this Court's assessment of relevance under a different subpoena – the extremely broad one directed to Mr. Petelin – and the Kazakh Entities do not explain what would make this Court's rulings so potentially disruptive to the management of the New York case.

In *Woodard v. Victory Records*, the risk of inconsistent rulings arose from the fact that plaintiffs "took inconsistent position[]" in this District and in the issuing district on a choice of law issue with respect to their privilege claims for strategic purposes. *Id.* at *5. Thus it made sense to have the parties dispute that issue in the

---

12613381 at *3. The same is true of *In re Subpoena to Kia Motors Am., Inc.,* SACV 14-315 JLSRNBX, 2014 U.S. Dist. LEXIS 72827 at *2 (Mar. 6, 2014), [Opening Br., p. 10], which involved as the non-party "a national automotive company, not an individual California resident."

6                  OPPOSITION TO MOTION TO TRANSFER
Case No.: 18-mc-00049-ODW-JC

court where the underlying litigation was (and where the precise issue between them had already come up).

### C. Mr. Petelin's Litigation to Protect His Privacy Interests As to the Non-Party Subpoena to Wells Fargo Does Not Constitute Consent to Transfer

As noted, Mr. Petelin has appeared in the New York proceedings to assert his privacy interests with respect to the Kazakh Entities' subpoena to Wells Fargo for his bank records. But his efforts there to limit the Wells Fargo subpoena have little legal relevance to this transfer motion.

The Kazakh Entities do not appear to be arguing that Mr. Petelin's efforts to protect his privacy in New York somehow constitute an "extraordinary circumstance" requiring transfer. Instead, they assert that Mr. Petelin "has effectively waived any objection he might have to transferring the motion to compel." [Opening Br., p.8]. Rule 45(f) itself contains no waiver language in it, but the Kazakh Entities' argument relies on *Argento v. Sylvania Lighting Services Corp.*, No. 15-CV-01277-JAD-NJ, 2015 WL 4918065 at *4, 2015 U.S. Dist. LEXIS 108818 at *10 (D. Nev., Aug. 18, 2015).

In *Argento*, the plaintiffs served a subpoena issued from the District of Arizona on a non-party school district in the District of Nevada. The defendant moved to quash it in the District of Arizona. 2015 U.S. Dist LEXIS 108818 at *3. Plaintiffs then had an unsuccessful meet-and-confer with school district, after which they moved to compel in the District of Nevada and filed a motion to transfer back to the District of Arizona (the issuing court). *Id.* at *4. The defendant then opposed the transfer to Arizona, despite having previously gone to Arizona "to challenge the exact same subpoena." *Id.* at *11. The Nevada court noted that it was unfair and inefficient "to allow a party to challenge the same subpoena twice in two different courts." *Id*. That is not the case here; non-party Mr. Petelin is not seeking to challenge the same subpoena twice in two different courts. In any event, the Nevada

Court did not "need [to] resolve the waiver argument" as applied to the arguments of the party because the non-party had also opposed the transfer. *Id.*

If *Argento* does not support a waiver argument, perhaps the Kazakh Entities are arguing that Mr. Petelin's efforts to protect himself on the Wells Fargo subpoena in the New York Court should be deemed an implicit consent to the transfer. But nothing about his conduct in the New York court indicates consent to this transfer. Indeed, as the Kazakh Entities say, Mr. Petelin first took steps to narrow the Wells Fargo subpoena in early 2017. [Opening Br., p. 3]. This is months before the subpoenas served on Mr. Petelin in December 2017[7] were even in existence. In any event, this Court would not have been the appropriate one to address problems with that Wells Fargo subpoena. The Kazakh Entities proffer no authority supporting the idea that a non-party can forever lose the protections of Rule 45 by earlier protecting his interests under another subpoena (to a different non-party) in the court where that subpoena originated.

## CONCLUSION

For the foregoing reasons, respondent Gennady Petelin respectfully asks the Court to deny the motion to transfer.

DATED: April 23, 2018   Respectfully submitted,

ILLOVSKY LAW OFFICE
EUGENE ILLOVSKY

*/s/ Eugene Illovsky*
Eugene Illovsky

*Attorneys for Respondent*

---

[7] Curiously, the Kazakh Entities tell the Court the subpoenas to Mr. Petelin were served on December 21, 2017. [Opening Br., p. 4]. Their own New York counsel, however, sent an email to Mr. Petelin's then-counsel on *December 27*, asking "whether you will accept service of the subpoenas to Mr. Petelin." See Exhibit 32 attached to the Declaration of Eugene Illovsky filed in connection with the Motion to Compel and Joint Statement.